601 A.2d 1102

**In re MONTRAIL M., Harold S., Jr., and Matio C.**

**No. 80, Sept. Term, 1991.**

Court of Appeals of Maryland.

Feb. 24, 1992.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioners.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., David P. Kennedy, Asst. Atty. Gen., all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

This appeal concerns the Maryland Juvenile Causes Act, Maryland Code (1973, 1989 Repl.Vol.) § 3–801 *et seq.* of the Courts and Judicial Proceedings Article (CJ). We hold:

    1) The doctrine of merger is applicable to juvenile delinquency proceedings.

    2) Under the doctrine of merger, an adjudication that a child is delinquent[1] because of the commission of the delinquent act[2] of the unlawful possession of a controlled dangerous substance and a further adjudication that a

---

**1.** " 'Delinquent child' is a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation." Maryland Code, (1973, 1989 Repl.Vol.) § 3–801(*l*) of the Courts and Judicial Proceedings Article (CJ).

**2.** " 'Delinquent act' means an act which would be a crime if committed by an adult." CJ § 3–801(k).

child is delinquent because of the commission of the delinquent act of the unlawful possession of that substance with the intent to distribute it, both acts arising out of the same incident, are deemed to be one adjudication in the contemplation of double jeopardy principles.

3) The principles of merger ordinarily preclude multiple sanctions for one delinquent act.

4) In the case at hand, only one sanction was imposed as to each child adjudicated to be delinquent by reason of the commission of two delinquent acts—the unlawful simple possession of a controlled dangerous substance and the unlawful possession of that substance with intent to distribute.

5) In such circumstances, the principles of merger were not violated.

We flesh out our holdings.

I

Montrail M., Harold S., Jr. and Matio C., hereinafter the "Petitioners," were the subjects of a proceeding under the Juvenile Causes Act heard in the Circuit Court for Kent County, sitting as a juvenile court. The court conducted an adjudicatory hearing, and found that they were delinquent children because they had committed delinquent acts and required guidance, treatment, and rehabilitation. The delinquent acts which the court determined they had committed consisted of two victimless crimes arising out of one incident. When the Petitioners were apprehended, the police discovered that they had in their mutual possession crack cocaine, a controlled dangerous substance, contained in nine vials and a plastic packet. This discovery led to the court's findings, not now challenged, that each of the Petitioners not only possessed a controlled dangerous substance, proscribed by Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 287(a), but also, that they possessed the substance with intent to distribute it, proscribed by Art. 27, § 286(a)(1). The court further found that Montrail had violated the motor vehicle laws by operating an automobile without a

driver's license. Upon a disposition hearing, the court committed each Petitioner to the jurisdiction of the Department of Juvenile Services with direction to place Montrail and Harold in Hickey School and Matio in Hurlock Home.

The Petitioners appealed. The Court of Special Appeals delivered an opinion, *In re Montrail M.,* 87 Md.App. 420, 589 A.2d 1318 (1991), in which it affirmed the judgments of the circuit court with respect to Harold and Matio. As to Montrail, it affirmed the adjudications based on unlawful possession of a controlled dangerous substance and based on his unlawful possession of that substance with an intent to distribute, but reversed the adjudication that he violated the motor vehicle laws. The disposition of Montrail was vacated because "that disposition was based, in part, on the improper adjudication...." *Id.* at 427, 589 A.2d 1318. Montrail's case was remanded to the circuit court for further proceedings regarding his disposition. *Id.* at 438, 589 A.2d 1318.

Montrail, Harold and Matio joined in a petition for the issuance of a writ of certiorari. We granted the petition. Their position is capsuled in the heading of their argument in their brief:

The finding of "simple possession" of cocaine must be vacated under the doctrine of merger.

They conclude their argument with the "request that the trial court's judgment and that of the Court of Special Appeals be reversed," which we take to mean from the tenor of their argument that they seek new adjudicatory and disposition hearings. The objective of the Petitioners founders on the shoals of their erroneous concept of the effect of the application of the doctrine of merger.

## II

### A

■ The doctrine of merger was long known at the common law, and applied in criminal causes. Although a proceeding under the Juvenile Causes Act is deemed to be a

civil action rather than a criminal cause,[3] we declared in *Parojinog v. State*, 282 Md. 256, 260, 384 A.2d 86 (1978), citing *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), that the provisions against being twice placed in jeopardy, contained in the Fifth Amendment to the Constitution of the United States and as a part of the common law of Maryland, are "fully applicable to juvenile adjudicatory proceedings."

## B

The Fifth Amendment to the Constitution of the United States includes the clause "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." The Clause is enforceable in state criminal prosecutions through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Although the Maryland Constitution does not contain a provision prohibiting double jeopardy, the right was recognized in the common law long before the adoption of the Fifth Amendment, and was applied by our courts for many years before the decision in *Benton. See Thomas v. State*, 277 Md. 257, 353 A.2d 240 (1976). *See also Middleton v. State*, 318 Md. 749, 756, 569 A.2d 1276 (1990).
Under settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, as well as the usual rule for determining whether two offenses are deemed the same for double jeopardy purposes, when both offenses are based on the same act or acts, is the so-called "required evidence test."

---

**3.** One of the purposes of the Juvenile Causes Act is "[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior." Maryland Code (1973, 1989 Repl.Vol.) § 3–802(a)(2) of the Courts and Judicial Proceedings Article. Section 3–824(a)(1) of the Act declares: "An adjudication of a child pursuant to this subtitle is not a criminal conviction for any purpose...." It is firmly established that proceedings under the Act are civil in nature.

*Williams v. State,* 323 Md. 312, 316, 593 A.2d 671 (1991). The required evidence test "applies to both common law and statutory offenses." *Williams* at 317, 593 A.2d 671. The test

> "focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter."

*Snowden v. State,* 321 Md. 612, 617, 583 A.2d 1056 (1991), quoting from *State v. Jenkins,* 307 Md. 501, 517, 515 A.2d 465 (1986). The test was explained in *Thomas v. State,* 277 Md. 257, 267, 353 A.2d 240 (1976):

> The required evidence is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double jeopardy [and merger] purposes, even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy [and merger] purposes.

Judge Eldridge, speaking for the Court in *Williams,* at 318, 593 A.2d 671, observed:

> Where two offenses are based on the same act or acts, and the two offenses are deemed to be the same under the required evidence test, merger follows as a matter of course.

"Where there is merger based upon the required evidence test, the offense not having a distinct element merges into the offense having a distinct element." *Id.* at 322, 593 A.2d 671.

### III

#### A

■ In the case at hand, the required evidence test calls for the application of the doctrine of merger. The two

victimless offenses, being based on the same act, are deemed to be the same under the required evidence test, and merger follows as a matter of course. As it is commonly phrased, the lesser offense merged into the greater offense. The merger, however, does not affect the *adjudications* of the circuit court based on the findings that the Petitioners had committed the two delinquent acts. The two adjudications are not inconsistent nor are they the result of successive prosecutions. We see no besmirching of the integrity of the determination that the Petitioners had committed the delinquent act of simple possession of cocaine as well as the delinquent act of possession of that substance with intent to distribute. The two adjudications stand inviolate, unaffected by the merger.

In a criminal prosecution a judgment consists of the conviction and the punishment imposed thereon; a conviction does not ripen into a judgment until amercement or a sentence of imprisonment is imposed. When this is translated into the language of juvenile proceedings, a judgment consists of an adjudication that a child is delinquent because of the commission of a delinquent act, and the disposition made of the child on that adjudication. The adjudication does not ripen into a judgment until disposition.

In a criminal prosecution, a merger does not serve to wipe out a conviction of the merged offense. The *conviction* simply flows into the *judgment* entered on the conviction into which it was merged. As we have seen, if the merger was prompted by the required evidence test, the lesser offense is merged into the greater offense. So here, the adjudication that each of the Petitioners was a delinquent child by reason of committing the delinquent act of the unlawful simple possession of cocaine flowed into the judgment based on the finding of a delinquent act by reason of the unlawful possession of that drug with the intent to distribute it. The result is that the *adjudications* as to both delinquent acts stand, unaffected by the merger. In other words, as far as the *adjudications* are concerned, the

position of the Petitioners remains the same, merger or no merger.

### B

■ Although a merger does not wipe out the merged adjudication, it may impact on the disposition thereunder. In criminal prosecutions, one of the protections the doctrine of merger affords goes to the preclusion of multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–2077, 23 L.Ed.2d 656 (1969). A merger serves, ordinarily, to preclude a separate sentence on each offense. *See Middleton v. State*, 318 Md. at 757, 569 A.2d 1276; *Nightingale v. State*, 312 Md. 699, 702–703, 542 A.2d 373 (1988); *State v. Frye*, 283 Md. 709, 393 A.2d 1372 (1978). The permissible punishment is that imposed on the greater offense.[4] *See Williams v. State*, 323 Md. at 316, 593 A.2d 671.

In juvenile proceedings, although placement of a delinquent in an institution is not considered to be a "punishment," the reality is that the Petitioners here were found to have committed acts which were crimes if committed by an adult. They were placed in institutions where they may be restrained of liberty for years. The Supreme Court observed in *In re Gault*, 387 U.S. 1, 27, 87 S.Ct. 1428, 1443, 18 L.Ed.2d 527 (1967), quoting from *Holmes' Appeal*, 379 Pa.

---

4. Even if two offenses would ordinarily merge and be deemed the same under the required evidence test, the Legislature may punish conduct more severely by providing a separate punishment for both offenses. *See Frazier v. State*, 318 Md. 597, 614–615, 569 A.2d 684 (1990). Judge Eldridge, speaking for the Court in *Williams v. State*, 323 Md. 312, 318, 593 A.2d 671 (1991), observed:
This exception applies where the two sentences are imposed after a single trial and where the legislative intent to authorize the imposition of cumulative sentences is clear. *See, e.g., Randall Book Corp. v. State*, 316 Md. 315, 323–324, 558 A.2d 715, 719–720 (1989); *Whack v. State*, 288 Md. 137, 143–150, 416 A.2d 265, 268–271 (1980), *appeal dismissed and cert. denied*, 450 U.S. 990, 101 S.Ct. 1688, 68 L.Ed.2d 189 (1981); *Newton v. State*, 280 Md. 260, 274 n. 4, 373 A.2d 262, 269 n. 4 (1977).

599, 616, 109 A.2d 523 (1954) (Musmanno, J., dissenting) (footnotes omitted):

It is of no constitutional consequence—and of limited practical meaning—that the institution to which [a boy] is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a "receiving home" or an "industrial school" for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes "a building with whitewashed walls, regimented routine and institutional hours...." Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and "delinquents" confined with him for anything from waywardness to rape and homicide.

See In re Mark R., 294 Md. 244, 254–256, 449 A.2d 393 (1982). The dispositions which placed the Petitioners in the institutions, although certainly not as onerous as incarceration in a prison, were nonetheless "punishments" for purposes of the application of the double jeopardy prohibition. That is to say, the sanctions imposed here were the equivalent of punishment imposed upon a conviction in a criminal cause. Thus, the dispositions are within the contemplation of merger principles.

The disposition of each Petitioner, committing him to the jurisdiction of the Department of Juvenile Services for placement in an institution, covered, on its face, both the adjudication based on the commission of the delinquent act of simple possession of cocaine and the adjudication based on the commission of the delinquent act of possession of the drug with intent to distribute. There was only one "punishment" imposed, and absent a separate sanction for each adjudication, the principles of merger were not violated. The Petitioners urge, however, that as long as both adjudications stand, they are "punished" over and above that reflected in the disposition announced. Therefore, they seek to have the adjudication as to simple possession stricken, and they would accomplish that through the doctrine of

merger. But, we have determined, that even though merger occurs, both adjudications persist, and the objective the Petitioners seek, the vacating of the simple possession adjudication, is not attained by the merger doctrine on which they rely.

The issue we must resolve is before us in this posture. The adjudication based on simple possession is merged into the judgment based on possession with intent to distribute. The adjudication as to each delinquent act remains *in esse*, but only one sanction may be imposed because the two delinquent acts are deemed to be one for double jeopardy purposes under the doctrine of merger. The question is whether the Petitioners, as they insist, were each subjected to two "punishments"—one by the disposition announced, and the other arising from collateral consequences as a result of the survival of the lesser delinquent act.

The Petitioners argue that "a juvenile will in fact receive extra punishment as a result of the survival of the unmerged lesser included offense." They give several examples which, in their opinion, illustrate the deleterious effect of permitting the adjudication as to that "offense" to stand on the record. They point to "harmful consequences in terms of enhanced sentencing for subsequent offenses, or for future employment...." They claim that an "extra line on a 'rap sheet' can have negative consequences for a juvenile," and point to a determination of a waiver of juvenile jurisdiction in a possible future proceeding, and the placement of a child upon a future finding that the child is delinquent. They call upon *Adkins v. State*, 324 Md. 641, 598 A.2d 194 (1991) as reinforcing their "position that in fact having an additional adjudication which [,they incorrectly assert,] would have been vacated had Petitioners been adults clearly constitutes punishment cognizable under the principles of double jeopardy and merger." (emphasis added). Petitioners declare that *Adkins* "stressed that collateral consequences need not be 'concrete,' but may be recognized even if they are somewhat speculative." Petitioners conclude:

It clearly emerges from these considerations that Petitioners have in a practical sense been doubly punished for the same offense.

*Adkins* concerned "whether an appeal from an order revoking a defendant's probation and reimposing the previously suspended sentence is rendered moot by that defendant's completing service of his sentence while the appeal is pending." 324 Md. at 642, 598 A.2d 194. It was in such context that *Adkins* commented on the nature of collateral consequences. We believe that a determination whether an appeal may be prosecuted is readily distinguishable from a determination whether there exists a second punishment which offends the principles of merger. We do not think that the bare averment of the few collateral circumstances cited by Petitioners mount up to enough to constitute a special "punishment" for the "one offense" in the circumstances here. We do not believe that the rationale of *Adkins* is apposite. We do not take judicial notice that the suggested collateral consequences, as presented, flow from the continued existence of the two adjudications. The consequences are more speculative than real, predicated as they are upon future misconduct of the Petitioners. The dire consequences the Petitioners foretell would, in the main, in any event, be prompted only by the Petitioners themselves, not arising except on subsequent ill behavior on their part and their failure to respond favorably to the "program of treatment, training and rehabilitation" afforded them in the instant case. *See* CJ § 3–802. The issue here is far different from the question of the mootness of an appeal taken to void a conviction from which collateral consequences may flow directly, without further ado, not dependent on future conduct on the part of a defendant.

## IV

We see no violation of either double jeopardy prohibitions or merger principles in the circumstances. We note that it would certainly be appropriate, and perhaps desirable, for a judge in a juvenile cause to place the occurrence of a

merger on the record. But here such notation was neither constitutionally required nor compelled under the common law to assure both fairness in the proceedings and justice to the Petitioners.

We place no imprimatur on all the Court of Special Appeals said regarding merger in its opinion.[5] But we are in accord with the judgments it rendered. The judgments of the Court of Special Appeals are

AFFIRMED WITH COSTS.

---

**5.** For example, the Court of Special Appeals declared:
  [T]he concept of merger is inapposite to the proper application of Maryland's Juvenile Causes Act.
  *In re Montrail,* 87 Md.App. 420, 432, 589 A.2d 1318 (1991). But, the Court qualified that view later. It observed:
   It is not beyond the realm of imagination, however, that a juvenile court judge might disregard the letter and the spirit of a Juvenile Causes Act and impose separate "punishments" for a single act. Such action on the part of a juvenile court judge would clearly be improper.
  *Id.* at 432, 589 A.2d 1318, citing *Cf. Breed v. Jones,* 421 U.S. 519, 532–533, 95 S.Ct. 1779, 1787–1788, 44 L.Ed.2d 346 (1975) as "applying the Fifth Amendment double jeopardy prohibition, as it pertains to multiple prosecutions, to juvenile delinquency proceedings. . . ."