*State of Maryland v. Kaleem Michael Frazier*, No. 45, September Term, 2019.  Opinion by Hotten, J.

**CRIMINAL LAW—MERGER—FOURTH DEGREE SEXUAL OFFENSE—SECOND DEGREE ASSAULT**

The Court of Appeals held that, under the merger rule articulated in *State v. Lancaster*, 332 Md. 385, 631 A.2d 453 (1993), offenses and their sentences merge for purposes of sentencing.  The Court declined to overturn *Lancaster*, citing principles of *stare decisis*.  Departure from *stare decisis* should occur sparingly and is only warranted when precedent is "clearly wrong" or when it is plainly obvious that adherence to the decision would result in substantial injustice.  Neither of those situations were implicated in this case.  Accordingly, the Court of Appeals affirmed the Court of Special Appeals and held that convictions for fourth-degree sexual offense and second-degree assault merge.  Therefore, the only permissible punishment was the sentence for fourth-degree sexual offense—the offense having the additional element.

Circuit Court for Harford County
Case No. 12-K-16-001751
Argued: February 6, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 45

September Term, 2019

_____

STATE OF MARYLAND

v.

KALEEM MICHAEL FRAZIER

_____

McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,
Raker, Irma S. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Hotten, J.

_____

Filed: July 14, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The events underlying this appeal stem from the sexual assault of a victim[1] in October 2016, by her then-boyfriend, Kaleem Michael Frazier ("Respondent"). Respondent was charged with rape in the second degree (Count I), second-degree sexual offense (Count II), fourth-degree sexual offense (Count III), second-degree assault (Count IV), and false imprisonment (Count V). On February 24, 2018, Respondent was convicted of second-degree assault and fourth-degree sexual offense after a seven-day jury trial in the Circuit Court for Harford County. Respondent was sentenced on March 26, 2018 to a period of ten years' incarceration with all but five years suspended for the second-degree assault count, and one year for the fourth-degree sexual offense charge to run consecutively, followed by supervised probation for a period of five years.

The State presents the following questions for our review:

1. Should this Court reconsider the rule articulated in [*State v. Lancaster*], 332 Md. 385[, 631 A.2d 453] (1993), and hold that where two offenses are deemed the same for purposes of merger, a court may impose a sentence based on the offense that carries the greater penalty?

2. If the Court permits a sentencing court to impose a sentence available pursuant to a lesser-included offense, even if it provides the greater penalty, was Respondent's sentence legal?

For the reasons discussed *infra*, we answer the first question in the negative, and in light of our resolution of the first question, need not address the second. Accordingly, we shall affirm the decision of the Court of Special Appeals.

---

[1] To protect the privacy of the victim, we will not to refer to her by name.

FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Incident and Trial Court Proceedings[2]*

Respondent and the victim had been involved in a relationship since February of 2016.[3]  On the evening of October 3, 2016, the couple attended football practice of the victim's son.  Respondent had been drinking and became increasingly agitated with the victim.[4]  Respondent, the victim, and her minor sons returned to her townhome for dinner.  After the victim prepared her sons for bed and retired to her bedroom, Respondent confronted the victim about a text message she had received from the football coach of a rival team.  The victim informed Respondent that the coach was just a friend, and that a few weeks before the incident, his team played against her son.  Respondent accused the victim of lying about the nature of that relationship.[5]  He became angry, called the victim several disparaging names, grabbed her by the shirt and "pulled [her] up," forcibly pulled her hair, ripping out some of her extensions, and repeatedly called her a liar and a slut.  The victim also testified that Respondent slapped her across the face, and after locking her in the bedroom, forced her to perform oral sex.  The victim testified that she was crying as

---

[2] The facts underlying this appeal are summarized from the testimony provided by the parties at trial.

[3] Respondent and the victim had known one another for more than ten years and had been engaged in a sexual relationship "off and on" throughout that period.

[4] Respondent was upset with the victim because she left his sunflower seeds in her car.  They argued and Respondent left the area to purchase beer from the liquor store.  Upon his return, Respondent appeared to be intoxicated.

[5] The victim testified that the entirety of the text message exchange consisted only of messages about football.

she told Respondent "no" and asked him to "please stop," but was afraid to scream for fear of waking her sons. When asked about the events that transpired after Respondent locked the door, she stated:

> So[,] he told me that I was going to suck his dick and I said, no. And he said, yes, you are. He was wearing basketball shorts, no shirt, no underwear. He told me to take off my clothes. I said, no, I don't want to. And he then grabbed my pants and like pulled me towards him and then took my shirt off and then he--I don't remember how I got on the bed. He got on the bed and he had already taken off his basketball [shorts] and he starts taking my head and putting it down there and I'm still asking him to please stop. But he wouldn't.

The victim further testified that she begged Respondent "please, no, don't do this." According to the victim, Respondent "proceed[ed] to put his penis inside [her]" and squeezed her neck and throat as she was laying on her stomach. The victim testified that she did not physically resist Respondent because she was "scared he would hurt [her] a lot more." She hoped that Respondent would become unaroused by her running nose, tears, and repeated pleas to "please stop."

Sometime after midnight on October 4, the victim attempted to leave the bedroom. Respondent told the victim that she could not leave. When she informed Respondent that she just wanted to get something to drink, Respondent followed her to the kitchen, again calling her a "slut[]" and a "liar." The victim testified that Respondent then "grabbed [her] by the hair" and "slapped [her] in the face again." After violently pulling her hair and slapping her, the victim testified that: "He looks at me and says, 'do you know what you and Nicole Brown Simpson … have in common? [B]oth of your father's names are Lou, and that is how long I have been thinking about killing you.'" When the prosecution

3

questioned the victim regarding her reaction to the statement, she replied that she did not think she was "going to make it through the night." While in the kitchen, the victim asked Respondent for permission to go back upstairs to check on her sons. He responded, "yeah, but I'm not done with you." When the victim entered her son's bedroom, she found one of her sons awake and afraid. He asked her if she was okay because he had heard arguing. While she was consoling her son, Respondent texted the victim, asking: "[W]hat are you doing, are you playing games[?]" Respondent instructed the victim to come back to the room. The victim returned to the bedroom and Respondent locked the door behind her. He told her, "you are going to fuck me again[,]" and took off her clothes. The victim testified that he then raped her a second time. The victim attempted to leave when it appeared Respondent had fallen asleep, but "he popped back up [again]."

That morning, the victim dropped off her sons at school and Respondent at a nearby bus stop. The victim testified that Respondent asked whether the relationship was over and she assured him that "everything [was] fine[]" and that they would "work through this." The victim alleged that Respondent responded, "If you are lying, I'm going to kill you." Thereafter, the victim called her mother to tell her what happened. Her mother suggested that she go to her sister's ("G.'s") house to be safe. At trial, G. testified that the victim appeared "frantic" and "very upset" when she arrived. A family friend, E.T., had already been in contact with G. because one of the victim's sons emailed E.T. in the middle of the night, alleging that Respondent was hurting the victim. The victim reported the physical and sexual assault to the police. Deputy Novak, the officer who conducted the preliminary interview, testified that she observed red bruises on the victim's chest and neck that were

4

consistent with the victim's statement of events, and that the victim told her that Respondent "ma[d]e her do some things she felt she didn't want to do." Deputy Novak sent the victim to Harford Memorial Hospital for examination.

A nurse performed a Sexual Assault Forensic Examination ("SAFE") and a consulting expert testified that the results from that exam were inconclusive regarding whether the victim had been raped.[6] After leaving the hospital, the victim filed for and was granted a protective order. Respondent also testified at trial, describing his relationship with the victim as "up and down[,]" and that "trust issues[]" contributed to the tumultuous nature of the relationship. He testified that he and the victim had consensual sexual intercourse and fellatio on the evening of October 2 and again, on the morning of October 3.[7] When asked about the events that transpired the evening of October 3, 2016, after football practice, Respondent testified that he was upset because the victim received a text message from an unsaved number and provided answers that he believed "didn't add up[.]"

Respondent admitted that he grew increasingly angry, and that he yelled at her because he was upset, but denied physically or sexually assaulting the victim. In closing argument, the prosecutor stated:

---

[6] The expert stated that the results of the genital examination were "normal," meaning there were no "physical or acute genital injuries." She did note that the SAFE revealed the victim had sexual intercourse, but it could not be determined whether the encounter was forced or consensual.

[7] Respondent testified that he stayed at the victim's house on the night of October 2 because the couple agreed that he would watch her sons, who had the day off from school on October 3. Respondent denied that he and the victim engaged in sexual acts on the morning of October 4 and that "[he] pushed her off [of him] while [they] were having sex[]" on the evening of October 3 because he was still "upset about [the text messages]."

[The victim] tells you all the while this is happening, he is threatening her. So[,] all of this is done by force. He is pushing her down. He is grabbing her hair. But it is also by threat of force. You only have to actually find as you saw in the elements, one of the two, that it is by force or threat of force. In this case, we actually have both because he is actually physically forcing her but he is also threatening her throughout, he is going to kill her over and over and over again. One time she leaves the room because he will allow it. Okay. I won't harm you when you walk out of the room this time. That is threat of force, ladies and gentlemen of the jury. I will allow it. Because had she walked out prior to that, you can bet the assault would have *continued*. And he slammed the door. His own words.

\*\*\*

There is no question [the victim] didn't consent. And then you heard some testimony that she went downstairs and *he continues* to threaten her. And still--in that bedroom[,] prior to letting her out, while he is physically assaulting her, slapping her, choking her, strangling her, and that when they go downstairs, *he slaps her again*.

(Emphasis added). Following deliberations, the jury convicted Respondent of second-degree assault and fourth-degree sexual offense, and acquitted him of the remaining charges.

At sentencing on March 26, 2018, the State argued that the trial judge should exceed the sentencing guidelines because of the "egregious nature of the harm," and impose a sentence of eleven years—ten years for the second-degree assault and one year for the fourth-degree sexual offense to run consecutively—suspending all but six years.[8] Defense counsel argued that the conviction for second-degree assault was the lesser included offense of the fourth-degree sexual offense conviction and, as such, both offenses should

---

[8] The guidelines range was three months to two years. The court departed from the sentencing guidelines and imposed a harsher sentence because Respondent had been convicted of a domestically related crime, involving a different victim, once before.

6

merge for purposes of sentencing. The sentencing judge rejected the merger argument, stating:

> With regard to the merger suggestion by [defense counsel] as made, my review of the evidence is that there were separate events of physical assault which was separate from or in addition to the sexual penetration of the victim. So[,] the Court sees this as a case in which[,] because there are these separate aspects of the acts of the [Respondent], both the slapping or smacking as [defense counsel] characterized it, and the push, putting the hands around the neck, as well as the sexual fourth[-]degree sex offense aspect, I believe that it is appropriate to sentence separately as to the two offenses.

The judge imposed a sentence of ten years, suspending all but five years for the second-degree assault and one year for the fourth-degree sexual offense, to be served consecutively, followed by five years of supervised probation. Respondent timely appealed to the Court of Special Appeals. *Frazier v. State*, No. 344, Sept. Term, 2018, 2019 WL 2539288 (Md. App. June 20, 2019).

***Appeal to the Court of Special Appeals***

The issue confronting the Court of Special Appeals was whether a jury found that the two offenses were based on the same act, or separate acts that could sustain the convictions for second-degree assault and fourth-degree sexual offense.[9] Respondent contended that the circuit court failed to merge the two convictions, for purposes of sentencing, in violation of the Double Jeopardy Clause of the Fifth Amendment to the

---

[9] Respondent also argued that there was insufficient evidence to support a conviction for fourth-degree sexual offense. The Court of Special Appeals declined to address the legal sufficiency argument, finding that Respondent "failed to state with particularity why his motion for judgment of acquittal should be granted[,]" and therefore, his argument on the issue of whether the evidence was sufficient was not preserved for appellate review. *Id*. at *4.

7

United States Constitution. *Id*. at *4. The State argued that the convictions were based on "separate and distinct acts," not requiring merger. *Id*. The Court of Special Appeals disagreed and found that it was "unable [] to specifically determine, which act or acts were the basis for [Respondent's] convictions[,]" because "the prosecutor muddled the second-degree assault elements and the fourth-degree sexual offense elements in her last and final words to the jury." *Id*. at *5–6. According to the Court of Special Appeals, the jury could have determined that the sexual offense and the physical assault were one continuous act—not two distinct acts. *Id*. at *6.

The Court cited opening statements and closing argument, in which the prosecution repeatedly described the events as "continuing" from one place to the next, implying that the physical and sexual violence should be treated as one ongoing criminal act. The Court noted that the record reflected two separate acts of assaultive conduct, but was not clear which act or acts formed the basis for each conviction and in the face of such "an unreasonable ambiguity[,]" the offenses must merge if the required evidence test is satisfied. *Id*. at *6.

The Court then applied the required evidence test to ascertain whether "all the elements of one crime are necessarily in evidence to support a finding of the other, such that the first is subsumed as a lesser included offense of the second." *Id*. at *7 (citing *Monoker v. State*, 321 Md. 214, 220, 582 A.2d 525, 527 (1990)). According to the Court, the fourth-degree sexual offense bore a distinct element that the offense of second-degree assault lacked, and as such, the assault conviction merged into the sexual offense conviction under the required evidence test. *Id*. The Court acknowledged that the greater

8

offense carried a lesser penalty than the lesser included offense and reiterated that the prosecutor could have, and should have, clarified whether Respondent was being charged with two distinct acts of assaultive behavior or one, leaving no ambiguity regarding whether the jury convicted Respondent for one continuous act or two separate acts. *Id*. at *6. The Court reversed and remanded the case to the circuit court for resentencing consistent with the holding that the convictions merged.

In the concurrence that was joined by Judge Andrea Leahy, Chief Judge Matthew Fader opined that the *Lancaster* rule—which the Majority opinion relied on in vacating the two separate sentences for convictions that merged—should be revisited. *Id*. at *9 (Fader, C.J., concurring). "[C]ourts in other jurisdictions facing the same issue have reached a result that is both consistent with [] double jeopardy jurisprudence and, at least in circumstances like [this one], more faithful to legislative intent and the amount of deference properly afforded jury verdicts." *Id*. at *10. According to Chief Judge Fader, strict application of the *Lancaster* rule would mean that "by *adding* a sexual component to his assault of the victim, [Respondent] *reduced* 10-fold the maximum penalty for that assault[]" and that is neither the result the General Assembly could have intended, nor does it accord due regard to the weight of the jury verdict. *Id*.

## DISCUSSION

We begin our analysis with whether the respective sentences for second-degree assault and fourth-degree sexual offense should merge. The State appears to concede that the offenses merged under the required evidence test, but disagrees that the merger of the offenses required the imposition of a sentence according to the "lesser included offense."

9

The State invites this Court to overturn our holding in *State v. Lancaster,* 332 Md. 385, 631 A.2d 453 (1993), and now hold that, where one offense merges into another, a trial judge may still impose the sentence based on the "lesser included offense," if the lesser included offense carries the harsher penalty. The State contends that "protecting double jeopardy rights by merging a conviction on a lesser [included] offense under the required evidence [test] does not require a court to disregard the potential sentence for that conviction." According to the State, this portion of *Lancaster* and the decisions that followed, were wrongly decided, because they incorrectly interpreted the required evidence test to limit *available* sentences. The State argues that the current rule unnecessarily restricts the trial judge's ability to sentence upon merger of the lesser included offense.

In contrast, Respondent argues that *Lancaster* was rightly decided and that *Lancaster* and its progeny mandate merger for purposes of conviction *and* sentencing. Respondent contends that the greater of the offenses, fourth-degree sexual offense, provides the sole sentence for his acts. We agree. We are not compelled to rewrite Maryland merger law, which provides that where the lesser included offense merges into the greater inclusive offense, the sentence merges as well.

## A. The offenses *and* their sentences merge.

To understand the sentencing implications, it is useful to review and outline why state merger law requires the merger of the fourth-degree sexual offense and second-degree assault convictions, and their respective sentences.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Due Process Clause of the

10

Fourteenth Amendment, provides that no individual shall be tried or punished more than once for the same offense.[10] *See* U.S. CONST., AMEND. V. Double jeopardy rights "protect[] against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *State v. Jones*, 340 Md. 235, 242, 666 A.2d 128, 131 (1995) (quoting *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 1897 (1989)). Additionally, "[t]he Supreme Court has held that states may impose cumulative punishment if it is clearly the intent of the legislature to do so." *Jones v. State*, 357 Md. 141, 163, 742 A.2d 493, 505 (1999) (citing *Missouri v. Hunter*, 459 U.S. 359, 365–69, 103 S. Ct. 673, 677–78 (1983)). The Supreme Court has also indicated that the protection against multiple punishments derived from the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter*, 459 U.S. at 366, 103 S. Ct. at 678.

Merger is the common law principle that derives from the protections afforded by the Double Jeopardy Clause. *Brooks v. State*, 439 Md. 698, 737, 98 A.3d 236, 258 (2014). It is the mechanism used to "protect[] a convicted defendant from multiple punishments

---

[10] The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb[.]" The Maryland Constitution does not contain a double jeopardy clause. *Scott v. State*, 454 Md. 146, 167, 164 A.3d 177, 189 (2017) (citing *Scriber v. State*, 437 Md. 399, 408, 86 A.3d 1260, 1265 (2014)). Merger and prohibition against double jeopardy are addressed in Maryland common law. *Id.*; *see also State v. Long*, 405 Md. 527, 536, 954 A.2d 1083, 1089 (2008) (internal citations omitted).

11

for the same offense."[11]  *Id*.  This Court has required merger "when: (1) the convictions are based on the same act or acts, and (2) under the required evidence test, the two offenses are deemed to be the same, or one offense is deemed to be the lesser included offense of the other."  *Id*.  Both elements must be satisfied before merger is required.[12]

1.  Same Acts or Distinctive Acts

We must first resolve whether Respondent's respective convictions for second-degree assault and fourth-degree sexual offense were predicated on "the same act or acts" or separately distinguishable acts.  *Id.*  In *Nicolas v. State*, we held that, in situations where there is a factual ambiguity regarding whether the convictions arose out of the same act or transaction, "that ambiguity is resolved in favor of the defendant."  426 Md. 385, 400, 44

---

[11] *See* RICHARD P. GILBERT & CHARLES E. MOYLAN, JR., MARYLAND CRIMINAL LAW: PRACTICE AND PROCEDURE 452 (1983) ("When a defendant is convicted of a greater inclusive offense, double jeopardy considerations protect him from being punished separately for a lesser included offense.  To punish an individual both for an aggravated assault and for the lesser included simple assault would constitute multiple punishment for the same offense, one of the classic evils against which double jeopardy provision protects.")

[12] Where the required evidence test has not been satisfied, the court may still pursue merger under the rule of lenity and fundamental fairness tests.  Under the rule of lenity, "if we are unsure of the legislative intent in punishing offenses as a single merged crime or as distinct offenses, we, in effect, give the defendant the benefit of the doubt and hold that the crimes do merge."  *Monoker v. State*, 321 Md. 214, 222, 582 A.2d 525, 529 (1990).  A court may also merge in the interest of fundamental fairness.  In this situation, "[c]onsiderations of fairness and reasonableness reinforce our conclusion [to merge] ....  We have ... looked to whether the type of act has historically resulted in multiple punishment[s].  The fairness of multiple punishments in a particular situation is obviously important." *Marlin v. State*, 192 Md. App. 134, 169, 993 A.2d 1141, 1162 (2010) (quoting *White v. State*, 318 Md. 740, 746, 569 A.2d 1271, 1274 (1990)).

A.3d 396, 404 (2012); *see also Brooks*, 439 Md. at 739, 98 A.3d at 260. Under these circumstances, the reviewing Court can "look to the record for other indications that might resolve the ambiguity in favor of non-merger." *Id.* at 741, 98 A.3d at 261. However, in the case at bar, the record is "not so clear." *Frazier*, 2019 WL 2539288 at *5.

As the Court of Special Appeals aptly acknowledged:

> The record reflects two separate acts of assaultive behavior. One where [Respondent] choked and slapped the victim. The second where [Respondent] raped the victim and forced the victim to perform fellatio on him. The jury could have disbelieved the occurrence of the neck grabbing and slapping *or* could have believed that both the rape and forced fellatio were the assaultive conduct. The factual basis for the jury's verdict is not readily apparent from the record before us and therefore creates an unreasonable ambiguity.

*Id.* at *6 (emphasis in original).

In addressing the separate instances of physical assault, the sentencing judge regarded the "slapping and smacking" and neck-grabbing as separate acts of assaultive conduct, as distinguishable and "separate from or in addition to the sexual penetration of the victim." The trial court found independent acts of sexual and physical assault, which were sufficient to establish the required elements for both fourth-degree sexual offense and second-degree assault. But, as the Court of Special Appeals noted, "the record looking at the trial in its entirety is not so clear." *Id.* at *5. For example, the Court of Special Appeals observed that the pattern jury instructions did not inform the jury that they must find acts of physical assault *and* separate acts of sexual contact to convict the defendant of both

13

crimes.[13] *See Snowden v. State*, 321 Md. 612, 619, 583 A.2d 1056, 1059 (1991) ("Snowden's [case] was a court trial; had it been a jury trial[,] we could have looked to the judge's instructions [to the jury] in hope of illuminating the rationale behind the verdicts."). Additionally, the prosecutor did not focus the attention of the jury on which acts formed the basis for the fourth-degree sexual offense conviction as distinguished from those acts that supported a conviction for second-degree assault. Between the deficiencies associated with the presentation of the State's case and the pattern jury instructions, it was entirely unclear whether the jury based the two convictions on the same or different acts. In the absence of a failure to specifically distinguish which acts formed the basis of each conviction, the ambiguity requires resolution in favor of merger.

2. Required Evidence Test

---

[13] The trial court provided the jury with the following instructions:

> In order to convict the Defendant of fourth[-]degree sexual offense, the State must prove that the Defendant had sexual contact with [the victim] and that the sexual contact was made against the will and without the consent of [the victim]. Sexual contact means intentional touching of [the victim's] genital or anal area or other intimate parts for the purposes of sexual arousal or gratification or for the abuse of either party.
> The Defendant is charged with second[-]degree assault. Assault is causing offensive physical contact to another person. In order to convict the Defendant of assault, the State must prove that the Defendant caused offensive physical contact with [the victim]; that the contact was the result of an intentional or reckless act of the Defendant and was not accidental; and that the contact was not consented to by [the victim]. Reckless act means conduct that under all the circumstances shows a conscious disregard of the consequences to other people and is a gross departure from the standard of conduct that a law[-]abiding person would observe.

*Frazier*, 2019 WL 2539288 at *5 n.3 (citing *Maryland Pattern Jury Instructions*).

14

In applying the required evidence test, we must consider whether the elements of second-degree assault are "subsumed" as a lesser included offense of fourth-degree sexual offense. "'The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.'" *Nicolas*, 426 Md. at 401, 44 A.3d at 405 (internal citations omitted). In other words, "the required evidence is that which is minimally necessary to secure a conviction for each…offense." *Id*. If each of the two offenses requires proof of an element which the other does not, merger is not required. *Id*. at 401–02, 44 A.3d at 405–06.

Section 3-203 of the Maryland Code, Criminal Law Article ("Crim. Law") prohibits assault in the second degree. Our case law embraces three types of common law assault: "(1) intent to frighten, (2) attempted battery, and (3) battery." *Jones v. State*, 440 Md. 450, 455, 103 A.3d 586, 589 (2014) (citing *Snyder v. State*, 210 Md. App. 370, 382, 63 A.3d 128, 135 (2013)). Upon conviction, the penalty for second-degree assault is a term of imprisonment not to exceed ten years, a $2,500 fine, or both. Crim. Law § 3-203.

It is well established that "[w]hen applying the required evidence test to multi-purpose offenses, *i.e.*, offenses having alternative elements, a court must examine the alternative elements relevant to the case at issue." *Nicolas*, 426 Md. at 403, 44 A.3d at 406. Common law battery—the type of assault at issue here—is an offensive or harmful contact with another person. *Id*., 44 A.3d at 406–07. A fourth-degree sexual offense requires "[s]exual contact," which is "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification, or for the abuse of

15

either party." Crim. Law § 3-301(e)(1). In order to be a crime, such contact must be without valid consent.[14] Judge Charles E. Moylan, Jr. further defined "sexual contact" thusly: "[P]urposeful tactile contact and tactile sensation, not incidental touching. It is the sexually-oriented act of groping, caressing, feeling, or touching of the genital area or anus

---

[14] Crim. Law § 3-308 provides:

**Prohibited--In general**

(b) A person may not engage in:

(1) sexual contact with another without the consent of the other;

(2) except as provided in § 3-307(a)(4) of this subtitle, a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 4 years older than the victim; or

(3) except as provided in § 3-307(a)(5) of this subtitle, vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 4 years older than the victim.

\*\*\*

**Penalty**

(d)(1) Except as provided in paragraph (2) of this subsection, a person who violates this section is guilty of the misdemeanor of sexual offense in the fourth degree and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both.

(2)(i) On conviction of a violation of this section, a person who has been convicted on a prior occasion not arising from the same incident of a violation of § 3-303, § 3-304, §§ 3-307 through 3-310 of this subtitle, § 3-311 or § 3-312 of this subtitle as the sections existed before October 1, 2017, § 3-315 of this subtitle, or § 3-602 of this title is subject to imprisonment not exceeding 3 years or a fine not exceeding $1,000 or both.

(ii) If the State intends to proceed against a person under subparagraph (i) of this paragraph, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

or breasts of the female victim." *Travis v. State*, 218 Md. App. 410, 465, 98 A.3d 281, 313 (2014). As the State recognizes, the fourth-degree sexual offense must merge with second-degree assault under Maryland merger law because the elements of second-degree assault are identical to those required for fourth-degree sexual offense, with the exception of one element—that the assaultive conduct be sexual in nature. In other words, the sexual contact element is what distinguishes fourth-degree-sexual offense from any other "touching" sufficient for second-degree-assault. We agree with the Court of Special Appeals that based on the required evidence test, the second-degree assault conviction is subsumed by the fourth-degree sexual offense. Where the parties diverge is regarding the sentencing implications of this merger.

3. Merger of Penalties Under the *Lancaster* Rule

The State argues that sentencing according to the second-degree-assault conviction does not run afoul of the Double Jeopardy Clause, and that federal merger law is silent regarding which of the two available punishments applies.[15]

In accordance with federal double jeopardy principles, this Court has previously stated that, when two convictions, such as second-degree assault and fourth-degree sexual offense, merge, "separate sentences are normally precluded[,]" unless the General Assembly intended otherwise. *Nicolas*, 426 Md. at 400, 44 A.3d at 405 (internal citations

_____

[15] At oral argument, the State recognized that the sentencing judge sentenced Respondent on both convictions. It concedes that sentencing on both convictions is inappropriate where merger is required, but argues that the Double Jeopardy Clause does not require that the sentence be capped by the maximum sentence for the greater offense when the lesser-included offense allows for a longer sentence.

17

omitted); *see also Newton v. State*, 280 Md. 260, 268, 373 A.2d 262, 266 (1977). This is true "regardless of the maximum authorized sentence for each offense." *Lancaster*, 332 Md. at 405, 631 A.2d at 464 (citing *Johnson v. State*, 283 Md. 196, 204, 388 A.2d 926, 930 (1978)).

Our case law also makes clear that "a sentence may be imposed only for the offense having the additional element or elements[,]" *i.e.*, the greater offense. *Id*. at 392, 631 A.2d at 457 (internal citations omitted); *see, e.g.*, *Hardy v. State*, 301 Md. 124,134, 482 A.2d 474, 480 (1984) (stating that it is "indelibly clear that in Maryland a defendant charged with a greater offense (that carries a lighter penalty) and a lesser included offense (that carries a heavier penalty) is only subject to the maximum penalty of the greater offense upon conviction"). "Where there is a merger of a lesser included offense into a greater offense, we are not concerned with penalties—the lesser included offense generally merges into and is subsumed by the greater offense regardless of penalties." *Spitzinger v. State*, 340 Md. 114, 125, 665 A.2d 685, 690 (1995). Given that the convictions for fourth-degree sexual offense and second-degree assault merged, so should the punishment corresponding to the lesser included offense of second-degree assault. *See In re Montrail M.,* 325 Md. 527, 534, 601 A.2d 1102, 1105 (1992) (stating that "[t]he permissible punishment is that imposed on the greater offense").

The principal case explicitly barring sentencing on the lesser included offense is *State v. Lancaster.* In *Lancaster*, the defendant was convicted of fourth-degree sexual offense for "engaging in fellatio with another person who is 14 or 15 years of age" when "the person performing the sexual act is four or more years older than the other person."

18

*Id*. at 389–90, 631 A.2d at 455–56. The same acts giving rise to the fourth-degree sexual offense resulted in a conviction for the lesser included offense of "unnatural or perverted sexual practices[,]" which then punished a person for "taking into his or her mouth the sexual organ of any other person[.]"[16] *Id*. at 399–400, 631 A.2d at 460–61. Because Lancaster was convicted of two separate offenses predicated on the same act, the Double Jeopardy Clause mandated merger to prevent double punishment. Nonetheless, Lancaster was sentenced according to both the fourth-degree sexual offense and the unnatural or perverted sexual practices charge. *Id*. at 390, 631 A.2d at 456. The maximum penalty for the former was one year; the statutory maximum was ten years for the latter. *Id*. at 395, 631 A.3d at 458. Lancaster appealed and the Court of Special Appeals held that he was improperly sentenced because the convictions should have merged at sentencing. We agreed and vacated the sentence for the unnatural or perverted sexual practices conviction, holding that the one-year sentence for fourth-degree sexual offense governed because the

---

[16] Md. Code, Art. 27, § 554 (repealed 2002). Section 554 provided in pertinent part:

**§ 554. Unnatural or perverted sexual practices.**

Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court.

*See Lancaster*, 332 Md. at 430 n.4, 631 A.3d at 477 n.4 (Chasanow, J., dissenting).

19

ten-year sentence was no longer an available sentence after applying the required evidence test and merging the convictions. *Id.* We reasoned that punishments should be imposed in accordance with the greater offense because this offense is "more specifically tailored to his or her conduct." *Id*. at 420, 631 A.2d at 472. Moreover, "[t]he maximum penalty prescribed by the statute for the greater and more circumscribed offense [] represents a legislative judgment concerning the punishment for the precise type of conduct[.]" *Id*. Accordingly, we affirmed the Court of Special Appeals and vacated the sentence for performing an unnatural or perverted sexual practice. *Id*. at 422, 631 A.2d at 473.

In a dissenting opinion, Judge John F. McAuliffe raised the very argument advanced by the State in the instant case. He agreed that only one conviction could survive merger for purposes of sentencing. *Id*. at 422–23, 631 A.2d at 473 (McAuliffe, J., dissenting). However, he rejected the proposition that double jeopardy principles required that the "conviction left standing be of the offense having the greatest number of elements[]" and that the court must sentence according to this so-called greater offense. *Id*. at 423, 631 A.2d at 473. Departing from the Majority, Judge McAuliffe would have "vacate[d] the judgment of conviction of fourth[-]degree sexual offense, and affirm[ed] the judgment for the more serious offense of committing an unnatural or perverted sexual practice." *Id*. Judge Howard Chasanow similarly disagreed with the Majority approach in *Lancaster*. *Id*. at 426, 631 A.2d at 475 (Chasanow, J., dissenting). It was clear to Judge Chasanow that the General Assembly intended for the two statutes to be cumulative, meaning that the appropriate sentence would have been ten years for the unnatural and perverted oral sex

20

act and one year for the fourth-degree sexual offense. *Id*. at 433, 443–45, 631 A.2d at 483–84.

As recognized by the *Lancaster* majority and the respective dissents by Judge McAuliffe and Judge Chasanow, the rule requiring that punishments merge with convictions at sentencing is not explicit in federal merger law. But, it logically follows from established merger principles that, upon merger of convictions, the only available sentence or punishment is the one accompanying the greater offense. *Montrail M.*, 325 Md. at 534, 601 A.2d at 1105. As a practical matter, if the conviction for the lesser included offense "flows into the *judgment* entered on the conviction into which it [is] merged," so too does the corresponding sentence. *Id.* at 533–34, 601 A.2d at 1105. Furthermore, in imposing a particular punishment after merger, the imposition of that punishment should be according to the offense that most precisely reflects the conduct, which is the offense bearing the greater number of elements; in this case, fourth-degree sexual offense. *Lancaster*, 332 Md. at 420, 631 A.2d at 472.

We also recognize—as did the Court in *Lancaster*—that in most cases, the greater offense for merger purposes also carries a more severe punishment. However, as noted by the Court of Special Appeals, a fourth-degree sexual offense necessarily includes harmful or offensive contact sufficient for second-degree assault. Yet, the General Assembly retained the one-year penalty for fourth-degree sexual offense. In 1994, after the *Lancaster* decision, the General Assembly amended the fourth-degree sexual offense statute, but did not implement a harsher penalty or indicate that the assault statutes and fourth-degree sexual offense should be read to authorize cumulative punishment. 1994 Md. Laws, Ch.

21

523 (H.B. 96). In fact, this crime is a misdemeanor with a one-year penalty for first-time offenders (three years for repeat offenders), and that "is an expression by the Legislature that certain acts of assault and battery should be reclassified as sexual offenses. The penalty is suggestive that the proscribed acts, while crimes, are to be dealt with much less severely than the maximum penalty for common law assault and battery."[17] Gilbert & Moylan, Jr., MARYLAND CRIMINAL LAW: PRACTICE AND PROCEDURE, § 5.9 at 81. Recognizing the merger implications post-*Lancaster*, if the General Assembly thought that a greater punishment for fourth-degree sexual offense was appropriate, it would have increased the penalty or allowed for duplicitous punishment. *See Lancaster*, 332 Md. at 416, 631 A.2d at 469 ("[T]he General Assembly is well aware of the principles of merger under Maryland law and knows how to specifically or expressly provide for multiple punishments in situations where there would otherwise be a merger.") (footnote omitted).

The State relies on *United States v. Peel* to illustrate the point that sentencing judges can apply either sentence when the greater offense carries a lesser penalty, without violating double jeopardy rights. 595 F.3d 763, 767–68 (7th Cir. 2010). There, the United States Court of Appeals for the Seventh Circuit held that merger of sentences was not required where the court found that the conviction for obstruction of justice merged with the conviction for bankruptcy fraud; obstruction of justice being the lesser included offense

---

[17] We note that the jury acquitted Respondent on the felony rape in the second-degree, Crim. Law § 3-304, and felony second-degree sexual offense, Crim. Law § 3-306. These felonies carry a sentence of up to twenty years and a lifetime on the sex offender registry. *See id.*; Md. Code, Criminal Procedure Article ("Crim. Proc.") §11-707.

but harsher punishment. *Id.* According to the Seventh Circuit, the purpose of merger as a remedy is to

> eliminate the doubleness. But which conviction must be vacated is not dictated by the Constitution. It is a matter committed to the trial judge's discretion because functionally it is a decision concerning the length of a defendant's sentence.

*Id.* at 768. The Seventh Circuit cautioned that holding otherwise would lead to "paradoxical" results, because the defendant would have received a shorter sentence than he would have had the greater offense not been charged. *Id.* (citing *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000)). Like the *Peel* Court, the Pennsylvania Supreme Court has found that double jeopardy has no impact on the punishments imposable. *Commonwealth v. Everett*, 550 Pa. 312, 705 A.2d 837 (Pa. 1998). In *Everett*, the defendant pleaded guilty to attempted murder and aggravated assault; attempted murder (the greater offense) carrying a maximum penalty of ten years and aggravated assault (the lesser included offense) carrying a maximum penalty of twenty years. *Id.* at 314–15, 705 A.2d at 838. The *Everett* Court declined to merge the convictions and their sentences, reasoning that the legislature imposed a greater penalty for conduct amounting to attempted murder and that penalty should control for sentencing purposes, regardless of merger. *Id.* at 316, 705 A.2d at 839. We find neither *Peel* nor *Everett* persuasive, because those cases have no bearing on the law of merger in this state.

Nonetheless, other jurisdictions have reached conclusions similar to *Lancaster*. In *State v. Dragoo*, 277 Neb. 858, 765 N.W.2d 666 (Neb. 2009), the Supreme Court of Nebraska held that the driving under the influence ("DUI") offense was the lesser included

23

offense of the DUI causing serious bodily harm offense, and the "conviction and sentence on the lesser [included] charge must be vacated," regardless of which offense carries the greater penalty. *Id.* at 865, 765 N.W.2d at 672; *see also People v. Halstead*, 881 P.2d 401, 405–08 (Colo. App. 1994). As explained above, we have consistently held that, where merger is required, sentences should be imposed according to the offense encompassing the additional element. We see no reason to depart from that path.

## B. Departure from established precedent is inappropriate in this case.

Under the doctrine of "*stare decisis*," precedent "should not be lightly set aside[.]" *Unger v. State*, 427 Md. 383, 417, 48 A.3d 242, 261 (2012) (citing *State v. Green*, 367 Md. 61, 78, 785 A.2d 1275, 1285 (2001)). Adherence to precedent is the "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609 (1991). However, *stare decisis* is "not an absolute." *Green*, 367 Md. at 79, 785 A.2d at 1285. This Court will depart from established precedent for one of two reasons: (1) the prior decision is "clearly wrong and contrary to established principles" or (2) the precedent has been "superseded by significant changes in the law." *State v. Waine*, 444 Md. 692, 700, 122 A.3d 294, 294 (2015).

Here, the fact that the greater included offense carries a lesser penalty does not render the *Lancaster* decision "clearly wrong." As noted by the Court of Special Appeals, the *Lancaster* rule only presents a problem when the lesser included offense bears a greater penalty. However, this "so-called" *Lancaster* sentencing problem could have been averted.

24

By virtue of having charged the defendant with fourth-degree-sexual offense and second-degree-assault, Respondent received a less severe punishment than he would have, if he had only been charged with second-degree-assault, because *Lancaster* mandates sentencing on the greater offense. Notwithstanding this unintended consequence of *Lancaster*, any resulting sentencing issues could have been resolved during trial. A jury instruction specifying that separate acts must form the basis for each conviction, and an explanation of which acts satisfied the elements for each crime would have prevented merger altogether. *See Cortez v. State*, 104 Md. App. 358, 369, 656 A.2d 360, 365 (1995) ("In a jury trial, the solution…is the giving of an appropriate instruction.").

> For example, the trial judge might instruct the jury that, if it found the defendant guilty of robbery (or kidnapping, or other compound crimes in which force or threat of force is an element), it could find the defendant guilty of battery (or assault, or both) only if it found that there was a use of force (or threat of force) separate from and independent of the force (or threat of force) employed to effect the greater offense.

*Id.* Had the jury been instructed accordingly, there would have been no question as to what act or acts formed the basis for convictions—if the jury then convicted Respondent on both counts, it would have been clear that the jury found two separate acts of sexual assault or physical assault. *See Brooks*, 439 Md. at 741–42, 98 A.3d at 261 (mandating merger of false imprisonment and first-degree rape because neither the jury instructions nor the record reflected that the jury viewed the events as two distinct acts).

At trial, prosecutors also have a responsibility to explain the required elements of the crime charged. In closing argument, the prosecutor convoluted the applicable elements and acts, blurring the distinction between which act or acts supported the conviction for

25

second-degree assault and which supported a conviction for the fourth-degree sexual offense. In closing, the prosecutor described forced vaginal intercourse and stated that the assault "continued" from the upstairs bedroom to the kitchen. Had the prosecutor been clear regarding the acts sufficient to sustain a conviction for each, there may have been no "*Lancaster* problem."

Underlying the State's argument is the premise that sexual assault should be punished more severely than what is currently prescribed in the fourth-degree sexual offense statute. This, however, is an issue that must be addressed by the General Assembly. "Legislatures, not courts, prescribe the scope of punishments." *Hunter,* 459 U.S. at 368, 103 S. Ct. 673 at 679. There has been no clear expression of legislative intent that second-degree assault and fourth-degree sexual offense should be punished cumulatively. In the absence of clear legislative intent, a court in this circumstance may not impose a greater penalty than what is provided in the fourth-degree sexual offense statute.

## CONCLUSION

We affirm the judgment of the Court of Special Appeals. *Lancaster* requires the merger of both convictions and sentences. Once there has been a merger of a conviction under the required evidence test, the sentence for the lesser included offense is no longer available to the sentencing judge. We see no reason to overturn precedent, particularly where the problem the State cautions against may have been avoided.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

26