*Neil Dennis Morgan v. State of Maryland*, No. 2288, September Term 2019, Opinion by Wells, J.

## CRIMINAL LAW – DOUBLE JEOPARDY – MERGER

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects a defendant from multiple punishments for the same offense. Merger is the common law principle that derives from the protections afforded by the Double Jeopardy Clause.

## CRIMINAL LAW – DOUBLE JEOPARDY – MERGER – REQUIRED EVIDENCE TEST

The standard for determining whether one offense merges into another is the required evidence test. Because merger applies only if the two offenses are based on the same act or acts, application of the required evidence test begins by ascertaining whether the offenses at issue are based on the same act or acts. If the two offenses are unambiguously based upon different acts, then merger does not apply. If the two offenses are based upon the same acts, then the elements of the two offenses should be compared. If each offense requires proof of a fact which the other does not, in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, merger follows.

## CRIMINAL LAW – DOUBLE JEOPARDY – MERGER – REQUIRED EVIDENCE TEST– LEGISLATIVE INTENT

In *State v. Lancaster*, 332 Md. 385, 392 (1993), the Court of Appeals held that "[w]hen there is a merger under the required evidence test, separate sentences are normally precluded," and "a sentence may be imposed only for the offense having the additional element or elements. . . . The only exception to the principle that merger follows as a matter of course if one offense is included within the other under the required evidence test, is where, under some circumstances, the General Assembly has specifically or expressly authorized multiple punishments. Thus, when specifically authorized by the legislature, cumulative sentences . . . may under some circumstances be imposed." *Id*. at 394 (internal citations omitted). Here, merger is not required for several reasons. First, Mr. Morgan was convicted of a crime as well as a violation a civil court protective order. Second, a civil protective order violation is not an offense that has elements, like a criminal offense. Third, second-degree assault is not enumerated in the statute as an "element" of a violation of a protective order.

**CRIMINAL LAW – DOUBLE JEOPARDY – MERGER – RULE OF LENITY**

Where two offenses arise from the same conduct, and where there is uncertainty as to whether the legislature intended for their sentences to merge, the Rule of Lenity requires that the offense carrying the lesser maximum penalty merge into the offense carrying the greater maximum penalty. In applying the Rule of Lenity to this case, Mr. Morgan's sentence for violation of a protective order should merge into his sentence for second-degree assault. To accomplish this, we vacate the sentence for the violation of the protective order.

Circuit Court for Harford County
Case No.: C-12-CR-19-000196

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2288

September Term, 2019
_____

NEIL DENNIS MORGAN

v.

STATE OF MARYLAND
_____

Leahy,
Friedman,
Wells,

JJ.
_____

Opinion by Wells, J.
_____

Filed:  September 8, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Studies show that each year approximately one-third of Marylanders, both women and men, are the victims of some form of domestic violence. For example, statistics found in the 2020 report of the National Coalition Against Domestic Violence reveal that, "34.4% of Maryland women and 28.8% of Maryland men experience intimate partner physical violence, intimate partner rape and/or intimate partner stalking."[1] "Domestic Shelters," an organization which offers information for women who want to leave abusive relationships and seek refuge from their abusers, notes that "one in four women in the United States will experience domestic violence in their lifetime, most frequently by someone they know." Domestic Shelters' website also lists these alarming statistics: "Female victims most commonly first experience domestic violence between the ages of 18-24 (38.6%), followed by age 11-17 (22.4%), age 35-44 (6.8%) and age 45+ (2.5%)." And that "[a]lmost one out of five or 16.3% of murder victims in the U.S. were killed by an intimate partner; women account for two out of three murder victims killed by an intimate partner."[2]

Appellant, Neil Dennis Morgan, argues that we must apply the required evidence test in our analysis of the question that he presents on appeal, but the result is disturbingly incongruous as illustrated in the following scenario: A defendant who is subject to an order of protection from domestic violence, violates the order by, for example, assaulting their spouse. The State charges the defendant with violating the domestic violence statute and

---

[1] https://assets.speakcdn.com/assets/2497/ncadv_maryland_fact_sheet_2020.pdf. (Last visited: July 27, 2021). https://bit.ly/3yf9gW8.

[2] https://www.domesticshelters.org/articles/statistics/domestic-violence-statistics. (Last visited: July 27, 2021). https://bit.ly/2Wj1pZg.

second-degree assault. But upon conviction of both the violation of the protective order and the assault that stemmed from it, the defendant may only be sentenced for the violation of the protective order. The second-degree assault, by necessity, must merge into the protective order violation under the required evidence test.[3] That is what Mr. Morgan argues should have happened below.

There, a jury sitting in the Circuit Court for Harford County found Mr. Morgan guilty of assault in the second degree and violation of a protective order. The court sentenced Mr. Morgan to concurrent terms of ten years' imprisonment, all but eighteen months suspended,[4] for second-degree assault and 90 days for violation of the protective order. Mr. Morgan then noted this appeal, raising a single question—whether, applying the required evidence test to the circumstances of this case, second-degree assault merges into violation of the protective order.

For the reasons we discuss, the imposition of separate sentences for each of Mr. Morgan's convictions did not violate Double Jeopardy. Under *State v. Lancaster*, 332 Md. 385, 392 (1993), for two offenses to merge they must share the same elements. Here, second-degree assault does not merge into violation of a protective order for several reasons. First, Mr. Morgan was convicted of a crime as well as a violation of a civil order. More to the point, the domestic violence protective order statute exists in the realm of

---

[3] *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).

[4] Mr. Morgan's brief incorrectly states that he received five years of active incarceration for second-degree assault. The record reflects that the State only recommended five years of active incarceration, but the court imposed eighteen months.

domestic law; it was not codified in the criminal law article. Second, a protective order violation is not an offense that has elements, like a criminal offense. Third, second-degree assault is not enumerated in the statute as an "element" of a violation of a protective order.

However, where two offenses arise from the same conduct, and where there is uncertainty as to whether the legislature intended for their sentences to merge, the Rule of Lenity requires that the offense carrying the lesser maximum penalty merge into the offense carrying the greater maximum penalty. As such, Mr. Morgan's sentence for violation of a protective order should merge into his sentence for second-degree assault.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Morgan and the victim, Larissa Costa, previously had been romantically involved and had two young sons. Ms. Costa had physical custody of the boys, and Mr. Morgan had visitation twice a week. Before the time of the offenses here, on "multiple" occasions, a domestic violence protective order had been issued against Mr. Morgan, and, at the time of the offenses, such an order was in effect.

Under the terms of that protective order, which, among other things, enjoined Mr. Morgan from entering Ms. Costa's Bel Air residence, the pair would meet at a Walmart in Fallston to exchange the children on Mr. Morgan's visitation days. On Saturday, November 3, 2018, one of the days when Mr. Morgan was entitled to visitation, Ms. Costa was moving to another residence. Because she needed help in moving some of her furniture, she asked Mr. Morgan to come to her residence rather than meeting at the Walmart, and he did so.

3

Mr. Morgan arrived during the day, and, after helping Ms. Costa remove the television from its wall mount and packing it in her car, he left with the children. He returned between 8:00 and 9:00 p.m. with the children and an argument erupted between him and Ms. Costa. She told Mr. Morgan to leave and threatened to call the police. Instead of immediately leaving, Mr. Morgan grabbed her cell phone and then tried to leave. Ms. Costa followed him and reached into his back pocket in an attempt to retrieve her phone. Mr. Morgan wrestled Ms. Costa to the ground in the parking lot as she screamed and cried.

Several neighbors overheard the commotion. They intervened to break up the struggle, while one of them called 911. After one of the neighbors freed Ms. Costa from Mr. Morgan's grasp, she was able to recover her cell phone. She then went to her apartment to retrieve her children so that she could take them to a safe place. After she placed them in her vehicle and attempted to drive away, Mr. Morgan forced the driver's door open to prevent her from leaving, but she eventually managed to drive off. Mr. Morgan then left in his own vehicle.

Officers from the Harford County Sheriff's Department responded to the 911 call and interviewed the neighbors as well as Ms. Costa, who by then had returned to the scene. One of the responding deputies observed a "laceration" on Ms. Costa's face. The police took photographs of those injuries. The following day, the police filed a statement of charges in the District Court of Maryland for Harford County, charging Mr. Morgan with assault in the second degree and violation of the protective order "by abusing Larissa Costa."

4

Upon Mr. Morgan's demand for a jury trial, the case was transferred to the Circuit Court for Harford County. A two-day trial was held, during which Ms. Costa, the neighbors, and one of the responding law enforcement officers testified to the events of November 3rd.

The State's primary, but not exclusive theory, was that Mr. Morgan's assault on Ms. Costa was the act that violated the protective order. Not only did the charging document state as much, but also during opening statement, the prosecutor declared:

> The Defendant is charged with assault in the second degree and violating a protective order. For those of you who don't know, a protective order is essentially a court document that says, hey, Mr. Morgan, you are not allowed to assault or harm Ms. Costa. You're going to hear that an assault is a violation of that protective order.

Over the defense's objection, the jury was instructed on the charge of violation of the protective order as follows[5]

> In order to convict the Defendant of this crime, the State must prove the following; one, a protective order was issued; two, the protective order required the Defendant, (a), to refrain from abusing or threatening to abuse Larissa [Costa]; (b), to refrain from contacting, attempting to contact or harassing Larissa [Costa] except during the exchanges of the children; (c), to refrain from entering the residence of Larissa [Costa] located at []; (d), to immediately vacate the home of Larissa [Costa] located at []; (3), the Defendant violated the order by; (a), abusing or threatening to abuse Larissa [Costa]; (b), contacting or attempting to contact or harass Larissa [Costa]

---

[5] At the State's urging, the circuit court followed Maryland Criminal Pattern Jury Instruction ("MPJI-Cr") 4:26A (Md. State Bar Ass'n, 2d ed. 2012, 2020 Repl.), with the slight modification of adding the bolded term "or," which is absent from the pattern instruction. Because any of the four acts listed constitutes a violation of the protective order, the court was correct in doing so, and Mr. Morgan does not raise this issue on appeal. Indeed, his principal objection below was that, because the statement of charges expressly included only abuse as a violative act, the court should have omitted (3)(b)-(3)(d) from the list of those acts. Mr. Morgan does not raise this issue on appeal.

5

except as the order provided; (c), entering the residence of Larissa [Costa] located at []; **or**, (d), failing to immediately vacate the home of Larissa [Costa] located at []; (4), the Defendant knew of the order; and, (5), the protective order was in effect at the time of the alleged violation.

(Emphasis added.)

During closing argument, the prosecutor stated that Mr. Morgan had violated the protective order by failing "to refrain from abusing or threatening to abuse Ms. Costa," by "refrain[ing] from contacting her except for what is laid out in their order," and by failing to observe the prohibition against entering her residence. At one point, in setting forth the terms of the protective order, the prosecutor stated only that the defendant "shall not abuse or threaten to abuse [Ms. Costa] except for as indicated in this order." But the prosecutor then argued that Mr. Morgan had violated the protective order in several different ways: (1) by committing an assault, (2) by failing to exchange the children at the Walmart, and (3) by entering Ms. Costa's residence.

After deliberating twenty-one minutes, the jury found Mr. Morgan guilty of both charges. The court thereafter sentenced him to concurrent terms of ten years' imprisonment, all but eighteen months suspended, for second-degree assault and 90 days for violation of the protective order. Mr. Morgan then noted this timely appeal.

## DISCUSSION

### A. Parties' Contentions

Mr. Morgan contends that, under the facts of this case, his conviction for second-degree assault merges under the required evidence test into his conviction for violation of a protective order. This would be so, as Mr. Morgan contends, because under

6

the required evidence test, a conviction comprising fewer elements merges into that comprising the greater number of elements, regardless of the statutory maximum sentences. *See State v. Frazier*, 469 Md. 627, 653-54 (2020) (holding that "[o]nce there has been a merger of a conviction under the required evidence test, the sentence for the lesser included offense is no longer available to the sentencing judge"); *State v. Lancaster*, 332 Md. 385, 392 (1993) (stating that "[w]hen there is a merger under the required evidence test, separate sentences are normally precluded," and "a sentence may be imposed only for the offense having the additional element or elements"). In this case, the statutory maximum sentences are ten years for second-degree assault but only 90 days for violation of a protective order (with a discretionary enhanced penalty of one year for a repeat offense). Md. Code (2002, 2012 Repl. Vol.), Criminal Law Article ("CL"), § 3-203(b) (second-degree assault); Md. Code (1984, 2012 Repl. Vol.), Family Law Article ("FL"), § 4-509(a)(1), (2) (violation of protective order).[6]

The State counters that we held previously in *Quansah v. State*, 207 Md. App. 636 (2012), that second-degree assault and violation of a peace order do not merge under the required evidence test.[7] It further avers that each offense contains differing elements:

---

[6] All statutory references are to those versions in effect at the time of the offenses.

[7] Both parties recognize that, insofar as merger with second-degree assault is concerned, everything that applies to the violation of a peace order applies equally to the violation of a protective order, the principal difference between the two being the relationship between the victim and the perpetrator. *Compare* FL § 4-501(b)(i)-(iii) (including assault within definition of "abuse"), *with* Md. Code (1974, 2012 Repl. Vol.), Courts & Judicial Proceedings Article ("CJ"), § 3-1503(a)(i)-(iii) (same); *see also* FL § 4-509(b) (providing that, for purposes of subsequent offender penalties for violation of a

(continued)

violation of a protective order requires a defendant's knowledge of the existence of a protective order as well as a violation of its terms—neither of which is an element of second-degree assault; and assault requires a battery and the intent to harm—which are not elements of violation of a protective order.[8]

## B. The Domestic Violence Statute

The Maryland General Assembly passed the first statute to address domestic violence in 1980.[9] The statute was limited in terms of whom it protected and how long an order could remain in effect. The 1980 Act protected only a "household member," defined as "a spouse, blood relative or step relation as long as the members resided together when the abuse occurred." Additionally, unmarried couples could not obtain protection under the 1980 Act. The definition of "abuse" was confined to 1) causing serious bodily harm, 2) placing another in fear of imminent serious bodily harm, or 3) sexual abuse of a child as defined in the criminal code. The duration of the order was also quite limited. The 1980 Act only allowed for a five-day temporary order. A subsequent, or what is now called

---

protective order, a prior conviction for violation of a peace order "shall be considered a conviction under this section").

[8] During the pendency of this appeal and after briefs had been filed, this Court issued its decision in *Koushall v. State*, 249 Md. App. 717, (2021), *cert. filed*, Pet. Docket No. 50, Sept. Term, 2021 (filed Apr. 7, 2021), in which we held that second-degree assault does not merge, under the required evidence test, into misconduct in office. *Id.* slip op. at 13-17. In a letter, dated March 1, 2021, the State argued that the same rationale that applied in *Koushall* should apply here. We agree, as we discuss below.

[9] Maryland Code Annotated (1974, 1980 Rep'l Vol.), Family Law ("FL") Article, §§ 4-501 to 4-516. In 1984, the statute was repealed by Chapter 296, § 1 of the Acts of 1984, and was reenacted in the Family Law Article, §§ 4–501 through 4–516.

"final" protective order, could last for only fifteen days, including the time the temporary order was in effect.

In 1992, in response to criticism that the 1980 Act did not help as many victims of domestic violence as was hoped, the General Assembly undertook a complete statutory overhaul.[10]  The 1992 amendments expanded the classes of persons eligible for relief, added types of relief, and extended the possible length of orders. The amendments changed the definition of "abuse" to mean: "battery or assault and battery, serious bodily injury or threat of such an injury; rape or sexual assault offense; or attempted rape or sexual offense; false imprisonment and abuse of a child or vulnerable adult."[11]

The 1992 amendments also afforded protection to those who were previously excluded.  For example, the amendments expanded the group of persons eligible for relief under the act to include "former spouses, current spouses who were not household members, cohabitants and vulnerable adults."  Significantly, the amendments included emergency family maintenance relief and authorized courts to grant petitioners exclusive use and possession of the family home, or automobile, for employment and childcare

---

[10] The Maryland Network against Domestic Violence declared that "Maryland provided battered spouses less relief than almost any other state in the country." Maryland Network Against Domestic Violence, Report on Findings from the Statewide Study on Domestic Violence Petitions Filed for the Quarter October 1 – December 31, 1992, at 1 (1994). See also Susan Carol Elgin, *Domestic Violence: Is Maryland Responding?*, 28 MD. BAR J. 43 (1995); Regina DuFresne and Jonathan S. Greene, *Increasing Remedies for Domestic Violence: A Study of Maryland's Domestic Violence Act in the Courtroom*, 6 MD. J. CONTEMP. LEGAL ISSUES 155, n. 18 (1995).

[11] Subsequent amendments added mental injury to a child to this definition.

purposes. And the life of the order of protection was extended to one year, rather than 15 days.

In 1994, the General Assembly again amended the 1980 Act, this time to allow Maryland's police officers to arrest an abuser without a warrant if they have probable cause to believe the abuser violated an already existing order. Under these new amendments, the police were authorized to remove any firearms from the family home. Additional changes granted more protection to a victim of domestic violence. In charges of assault and battery, the court can compel a spouse-victim to testify against the abuser if "(1) the charge is the second offense within the same year, and (2) the spouse-victim refused to testify when sworn in a previous trial invoking 'spousal privilege.'"

Subsequent amendments, the most recent in 2016, have resulted in the current form of the statute, found in Title 4, subtitle 5 of the Family Law Article. Significant to this appeal, the domestic violence statute now, and at the time of Mr. Morgan's convictions, provides that an interim, temporary, or final protective order issued must state that a violation of the order may result in criminal charges and imprisonment, a fine, or both. FL § 4-508. And, as for punishments for violation of a protective order, FL § 4-509 states:

> (a) **A person who fails to comply with the relief granted in** an interim protective order under § 4-504.1(c)(1), (2), (3), (4)(i), (7), or (8) of this subtitle, a temporary protective order under § 4-505(a)(2)(i), (ii), (iii), (iv), (v), or (viii) of this subtitle, or **a final protective order** under § 4-506(d)(1), (2), (3), (4), or (5), or (f) of this subtitle **is guilty of a misdemeanor and on conviction is subject, for each offense, to**:
>
> (1) **for a first offense, a fine not exceeding $1,000 or imprisonment not exceeding 90 days or both**; and

(2) for a second or subsequent offense, a fine not exceeding $2,500 or imprisonment not exceeding 1 year or both.

(b) For the purpose of second or subsequent offender penalties provided under subsection (a)(2) of this section, a prior conviction under § 3-1508 of the Courts Article shall be considered a conviction under this section.

(c) An officer shall arrest with or without a warrant and take into custody a person who the officer has probable cause to believe is in violation of an interim, temporary, or final protective order in effect at the time of the violation.

(Emphasis supplied).

We take from the evolution of the statute over the last 40 years that the statute's primary purpose is to provide a civil remedy to victims of violence in interpersonal relationships. That protection is remedial, and preventative in the sense that it is designed to prevent violence from occurring in the future by giving trial courts a wide array of options to address individualized circumstances, provided that the complaining witness provides proof of violence or the potential for violence by a preponderance of the evidence.[12] An additional take away is that the legislature regards a violation of a protective order as a serious matter. The State, or the complaining witness, may file criminal charges against a respondent for a violation of an order of protection. Nothing in the statute prohibits the complaining party or the State from filing additional criminal charges to address conduct which might have given rise to a violation of the order.

---

[12] FL § 4-506(c)(2)(ii).

11

**C. Relevant Appellate Authority Emphasizes the Remedial Nature of the Domestic Violence Protection Statute Which May Subject Violators to Criminal Sanctions**

Appellate opinions that specifically address the domestic violence statute are scarce and neatly line up with the major revisions of the statute. These cases underscore the future-looking and "coercive" nature of a domestic violence protection order as a civil law remedy. And at the same time, the cases recognize that a violation of an order of protection could result in criminal sanctions. Indeed, in one case, the Court of Appeals explicitly concludes that the legislature did not intend for respondents subject to a civil order of domestic violence protection to escape related criminal penalties. We now examine each of the cases in turn.

1. *Barbee*

*Barbee v. Barbee*, 311 Md. 620 (1988) was the first case from the Court of Appeals to address any aspect of the 1980 Act. While the issue the Court resolved concerned which standard of review was applicable in appeals of domestic violence orders from the District Court, what the Court said about the 1980 Act is important.

Nancy Barbee filed a "Petition for Protection Against Domestic Violence" in a Baltimore City District Court against her husband, Joseph Barbee alleging that Mr. Barbee hit her with his fists outside a courtroom and later threatened her at her workplace. *Id*. at 622. The District Court granted Ms. Barbee a temporary ex parte protective order, and later, a final order. Mr. Barbee appealed to the circuit court. *Id*. The wife moved to dismiss the appeal, arguing that the then applicable section of the Courts and Judicial Proceedings

12

Article governing appeals entered in the District Court required an "on-the-record," rather than a de novo, standard of review.

For our purposes, in concluding that the applicable standard was de novo, the Court noted that the 1980 Act

> was designed to aid victims of domestic abuse by providing an immediate and effective nonmonetary remedy is readily apparent. To this end the Legislature empowered courts to order that the abuse be stopped, that the abuser leave the family home, and that other specified protective devices be implemented, all to protect the victims' immediate and future safety.

*Id*. at 623.

### 2. *Coburn*

The second case that the Court of Appeals decided was *Coburn v. Coburn*, 342 Md. 244 (1996), which concerned the 1992 and 1994 amendments to the 1980 Act. The central holding there was that prior allegations of abuse were admissible in a domestic violence protection hearing, regardless of whether those allegations were sufficiently pleaded in the petition for protection. *Id*. at 262.

In the District Court of Maryland for Baltimore City, Marcia Coburn filed a petition requesting domestic violence protection against her husband, William Coburn. She alleged that he had "slapped, punched, and threatened" her. *Id*. at 248. On the pre-printed petition form, she wrote that Mr. Coburn had physically abused and harassed her during the previous year. *Id*. The District Court issued a temporary order after an ex parte hearing, finding that Mr. Coburn had physically assaulted Ms. Coburn, and noted in the temporary order that there had been a "history of abuse" between the parties. *Id*. Mr. Coburn appealed, and a de novo hearing took place in the circuit court. At the final order hearing,

13

the court heard testimony about instances of prior abuse, in addition to testimony about the incident which prompted Ms. Coburn to file the petition. In granting Ms. Coburn a final protective order, the judge summarized her findings on the pre-printed order form, writing: "On 2/25/95 [Mr. Coburn] hit, punched and threatened [Ms. Coburn]. On previous occasions he has abused her and put her safety in jeopardy." *Id*. at 249. Mr. Coburn appealed, and the Court of Appeals granted certiorari.

In rendering its holding that evidence of prior instances of abuse were admissible at the hearing, the Court, quoting *Barbee*, noted that,

> [t]he purpose of the domestic abuse statute is to protect and "aid victims of domestic abuse by providing an immediate and effective" remedy. The statute provides for a wide variety and scope of available remedies designed to separate the parties and avoid future abuse. Thus, the primary goals of the statute are preventive, protective and remedial, not punitive. The legislature did not design the statute as punishment for past conduct; it was instead intended to prevent further harm to the victim.

*Id*. at 252. The Court reasoned that,

> excluding evidence of past abuse would violate the fundamental purpose of the statute, which is to prevent future abuse. The statute was not intended to be punitive. Its primary aim is to protect victims, not punish abusers. . . . Protective orders are based on the premise that a person who has abused before is likely to do so again, and the state should offer the victim protection from further violence.

*Id*. at 258-59.[13]

---

[13] *See also*, *Kaufman v. Motley*, 119 Md. App. 623, 631 (1998) ("That the Act was designed to aid victims of domestic abuse by providing an immediate and effective nonmonetary remedy is readily apparent. To this end the Legislature empowered courts to order that ... specified protective devices be implemented, all to protect the victims' immediate and future safety.")

### 3. *Katsenelenbogen*

Finally, in *Katsenelenbogen v. Katsenelenbogen*, 365 Md. 122 (2001) the Court of Appeals considered this Court's decision vacating a protective order issued by the circuit court after we, essentially, determined that the petitioner/wife had not proven that a domestic violence petition was warranted. *See Katsenelenbogen v. Katsenelenbogen*, 135 Md. App. 317 (2000). Ms. Katsenelenbogen obtained a protective for herself and one of her three minor children, claiming that her estranged husband had "shov[ed]" her, made "threats of violence," and engaged in "mental injury of a child," during a New Year's Day argument over his firing of the children's live-in nanny. What started as a verbal argument over the nanny's firing, quickly escalated into a physical confrontation between husband and wife. At one point, the husband called the police, urging them to come quickly because he feared "there could be some possible violence." The wife took that as a threat. Ultimately, the wife sought a protective order alleging, among other things, that the husband shoved her while the parties' nine-year old son "dove in between" them. 365 Md. at 127.

The Circuit Court for Montgomery County granted the wife's petition for a temporary protective order after an ex parte hearing. At the hearing on whether to issue a final protective order, the wife admitted that her husband had not struck or threatened to strike her on a prior occasion but had exhibited violent and controlling conduct in the past. *Id.* at 128. The circuit court granted a final protective order, being "convinced" that husband had shoved the wife.

On direct appeal to this Court, we reversed the circuit court. We concluded that because the wife did not testify that she was in imminent fear of harm when her husband shoved her, she had failed to show, by an objective standard, that she was in actual fear. 135 Md. App. at 342-43. We also noted that the issuance of a protective order "normally carries with it grave consequences for the perpetrator." *Id*. at 335. We also theorized that protective order determinations about parental fitness could have implications in later custody disputes. *Id*. at 336-37. We reasoned that the litigants in a family court dispute could view that the fitness of a parent had been adjudicated if a court awarded temporary physical or legal custody of a minor child under the protective order. *Id*. As stated, our focus was on whether the "abuse" at issue satisfactorily reflected "fear of imminent bodily harm," as required under FL § 4-501(b).[14] We concluded that the statute required more than simply fear. The circumstances had to demonstrate that a reasonable person feared serious bodily harm. *Id*. at 342-43.

---

[14]Abuse. — (1) "Abuse" means any of the following acts:
(i) an act that causes serious bodily harm;
(ii) an act that places a person eligible for relief in fear of imminent serious bodily harm;
(iii) assault in any degree;
(iv) rape or sexual offense as defined by Article 27, §§ 462 through 464C of the Code or attempted rape or sexual offense in any degree; or
(v) false imprisonment.

The Court of Appeals, when recounting our conclusions, noted that we had "overlook[ed]" the fact that if the trial court believed the wife's testimony, the husband shoving the wife would have been a sufficient basis upon which the court could have granted wife the protective order. 365 Md. at 131.

In its opinion, the Court of Appeals, quoting *Barbee* and *Coburn*, reaffirmed that the purpose of the domestic violence statute was "to protect and 'aid victims of domestic abuse by providing an immediate and effective' remedy." "Thus, the primary goals of the statute are preventative, protective and remedial, not punitive." 365 Md. at 134. Significantly, the Court noted:

> Although the provisions in the Family Law Article are, as stated, preventive and remedial, **the Legislature has not excused the perpetrators of domestic violence from the reach of the criminal law.** They are subject to prosecution for their conduct—for **assault**, rape and other sexual offenses, criminal homicide, kidnapping—and, indeed, for failing to comply with relief provided in a protective order. See Family Law Article, § 4–509(a).

*Id*. n.2 (emphasis supplied).

## D. Merger Principles

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects a defendant from multiple punishments for the same offense. *Frazier*, 469 Md. at 640. "Merger is the common law principle that derives from the protections afforded by the Double Jeopardy Clause." *Id.* at 641 (citing *Brooks v. State*, 439 Md. 698, 737 (2014)).[15]

"Under Maryland common law principles, the normal standard for determining whether one offense merges into another" is the required evidence test. *McGrath v. State*, 356 Md. 20, 23 (1999) (citation and quotation omitted). Because merger applies only if

---

[15] The failure of a trial court to merge sentences, where required by law, results in an illegal sentence, *Pair v. State*, 202 Md. App. 617, 624-25 (2011), *cert. denied*, 425 Md. 397 (2012), and therefore may be raised on appeal without the requirement of an objection below. *Chaney v. State*, 397 Md. 460, 465-66 (2007).

the "two offenses are based on the same act or acts," *Frazier*, 469 Md. at 641; *Middleton v. State*, 238 Md. App. 295, 306-07 (2018), application of the required evidence test begins by ascertaining whether the offenses at issue are based on the same act or acts. In so doing, we construe an ambiguous record in favor of the defendant. *Frazier*, 469 Md. at 642; *Nicolas v. State*, 426 Md. 385, 400 (2012). If the two offenses are unambiguously based upon different acts, our analysis ends, and merger does not apply. Otherwise, we proceed to the next stage of the analysis.

At this stage, we compare the elements of the two offenses. *McGrath*, 356 Md. at 23-24. "If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts." *Id.* (citations and quotations omitted). "But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, merger follows."[16] *Id.* at 24 (citation and quotation omitted) (cleaned up).

---

[16] The only exception to this rule is where "the legislative intent to authorize the imposition of cumulative sentences is clear." *Williams v. State*, 323 Md. 312, 318 (1991). Thus, the required evidence test ultimately is a rule of statutory construction, and a legislature may, without violating the constitutional prohibition against double jeopardy, "specifically authorize[] cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under" the required evidence test. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Examples of such anti-merger statutes under Maryland law include CL § 3-601(e) ("A sentence imposed under this section may be separate from and consecutive to or concurrent with a sentence for any crime based on the act establishing the violation of this section.") (child abuse), and CL § 3-602(d)(1) (same) (sexual abuse of a minor).

18

In applying the required evidence test to a multi-purpose criminal statute, which "embrac[es] different matters in the disjunctive," we "must examine the alternative elements relevant to the case at hand." *Hallowell v. State*, 235 Md. App. 484, 508 (2018) (quoting *State v. Ferrell*, 313 Md. 291, 298 (1988)). In other words, a reviewing court must treat such a statute "as it would treat separate statutes" and "**construct** from the alternative elements within the statute the particular formulation that applies to the case at hand." *Twigg v. State*, 447 Md. 1, 14 (2016) (quoting *Nightingale v. State*, 312 Md. 699, 706 (1988), *superseded by statute* 1990 Md. Laws, ch. 604) (emphasis added); *accord Nicolas*, 426 Md. at 403-04.

Prior to 1993 the Court of Appeals had not specifically opined about legislative intent and merger until the Court examined whether two statutes describing similar sexual offenses merged at sentencing in *Lancaster*, previously cited. There, a jury had convicted Lancaster of a violation of two provisions in the then-existing criminal code, Maryland Code (1957, 1992 Rep'l Vol.), Article 27, section 464C(a)(2) (Sexual Offense in the Fourth Degree) which, among other things, prohibited fellatio between a "person who is 14 or 15 years of age and the person performing the sexual act is four or more years older than the other person." The jury also convicted him of Article 27, section 554 (Unnatural and Perverted Sex Practices), which prohibited a person from taking "into his or her mouth the sexual organ of any other person...." 332 Md. at 390.

At sentencing, the trial court imposed separate sentences for each offense: one year and a $1,000 fine for the violation of section 464C(a)(2) and for the violation of section 554, 10 years, five of which were suspended in favor of five years' probation, plus a $1,000

19

fine. On direct appeal to this Court, Lancaster argued that the section 554 offense should have merged into the section 464C offense because the former offense had two additional elements that the latter did not. In other words, section 554 prohibited fellatio. So did section 464C, but it had the additional age differences between the two actors as separate elements. We agreed with Lancaster and vacated the sentence for the section 554 offense. The State petitioned for certiorari, which the Court of Appeals granted. *See Lancaster v. State,* 86 Md. App. 74, 82 (1991).

In ultimately upholding our decision that the offenses merged, the Court, first, examined the required elements test. 332 Md. at 391-393. After which, the Court, citing *Randall Book Corp. v. State*, 316 Md. 315, 323 (1989), concluded that "[t]he only exception to the principle that merger follows as a matter of course if one offense is included within the other under the required evidence test, is where, under some circumstances, the General Assembly has specifically or expressly authorized multiple punishments." Thus, "when specifically authorized by the legislature, cumulative sentences . . . may under some circumstances be imposed." 332 Md. at 394.

Critical to our consideration of this appeal, Judge Eldridge, writing for the majority in *Lancaster* declared:

> Moreover, our cases have continued to point out that, when two offenses based on the same act or acts are deemed the same under the required evidence test, multiple sentences are allowable only in some circumstances and only where the Legislature expressly or specifically or very clearly sets forth its intent that there be multiple sentences. For example, Judge Chasanow's dissent relies on language from *Randall Book Corp v. State, supra*, 316 Md. at 324, 558 A.2d at 720, that, with regard to multiple punishments, "a critical question is one of legislative intent" and that the required evidence test "is not dispositive." But, in the very same paragraph

20

from the *Randall Book* opinion, we explained why the required evidence test is not dispositive. Judge McAuliffe there stated for the Court (316 Md. at 323, 558 A.2d at 719–720):

> "The [required evidence] rule does not provide the final answer in cases involving multiple punishment because, when specifically authorized by the legislature, cumulative sentences for the same offense may under some circumstances be imposed after a single trial."

> Consequently, specific or express authorization by the Legislature is a pre-condition for multiple punishments when two offenses are deemed the same under the required evidence test.

332 Md. at 412. *Lancaster*, thus, stands for three propositions: (1) crimes with the same elements must merge; (2) if the legislature precludes the merger of offenses it must explicitly say so in writing[17]; and (3) if offenses merge under the required evidence test, then the crime with fewer elements merges into the one with more elements.

## E. The Application of the Required Elements Test to this Appeal Does Not Require Merger

Significantly, *Lancaster* concerned merger of two criminal offenses under the criminal code. But, unlike that case, here, we are faced with violation of a criminal statute and violation of a court order issued under the Family Law Article. The proof of a violation of an order of protection is different from the elements necessary to prove assault.

---

[17] This rule, it seems to us, applies only when the crimes are otherwise mergeable not, as here, where they are not otherwise mergeable. Here, the General Assembly could resolve the issues presented in this appeal by passing an anti-merger statute. Mr. Morgan's proposed resolution in this case seems perverse—he is "entitled" to a "free" assault so long as that assault constitutes a violation of a protective order. We seriously doubt that the General Assembly intended such a result.

In his reply brief, Mr. Morgan argues that this observation does nothing to lessen "that the violation of the court order *is satisfied* by the commission of assault." (emphasis in the original). And he asserts that it "merely confirms that assault merges into the violation of the protective order and not the other way around." We think that argument is flawed for three reasons.

*First*, we said that assault and the violation do not merge under the required elements test in *Quansah*. There, Quansah's landlord and former romantic partner, Martha Kembumbala, obtained a peace order against him, enjoining him from entering her premises where he had rented a room. But, while the order was in effect, Quansah returned, beat Ms. Kembumbala with a tire iron, and tried to set fire to her residence. Two other tenants testified about what happened. 207 Md. App. at 640-43. A jury convicted Quansah of second-degree assault and the violation of a peace order. *Id*. at 640.

On direct appeal to this Court, Quansah argued that the sentences should merge under the Rule of Lenity. We explained that when two statutory crimes arise out of the same act,

> [i]t is purely a question of reading legislative intent. If the Legislature intended two crimes arising out of a single act to be punished separately, we defer to that legislated choice. If the Legislature intended but a single punishment, we defer to that legislated choice. If we are uncertain as to what the Legislature intended, we turn to the so-called "Rule of Lenity," by which we give the defendant the benefit of the doubt.

*Quansah*, 207 Md. App. at 645 (citing *Walker v. State*, 53 Md. App. 171, 201 (1982) (other citations omitted)). In Quansah's case, it was unclear whether the jury convicted him of violating the peace order based on the same conduct. And because of that, Quansah argued

22

that because the violation of the peace order and the assault "were effectively a single event," "fundamental fairness" mandated merger. *Id.* at 646. The State argued that it was "likely" that the jury convicted Quansah based on separate acts, so the court properly imposed separate sentences. *Id.*

We said that the required evidence test did not compel merger, since each offense required proof of distinct elements. *Id.* at 653. However, we recognized that where it was at least unclear whether the legislature intended to authorize multiple punishments for offenses arising out of the same conduct, "the ambiguity must be resolved in favor of appellant." *Id.* at 653. Finding ambiguity as to whether the legislature intended for punishments to merge for the violation of a protective order and a second-degree assault arising from the same conduct, we ultimately held that the rule of lenity required merger.[18]

We now reaffirm that judgment. We conclude that second-degree assault requires proof different from a violation of a domestic violence protection order or a peace order. As we have seen, merger applies only if the "two offenses are based on the same act or acts," *Frazier*, 469 Md. at 641; *Middleton v. State*, 238 Md. App. 295, 306-07 (2018). The key to our analysis is what is meant by the phrase "lesser included offense." This suggests that a criminal offense can be broken into "bad acts" – components – that fit inside each other like nesting dolls. Consequently, in cases like *Lancaster*, the bad act was the same –

---

[18] And in *Simms v. State*, 240 Md. App. 606, 673-74 (2019), we concluded that for purposes of merger, there was no analytical difference between a peace order and a protective order. Mr. Morgan also relies on *Simms*, but *Simms* was decided based on the rule of lenity; it was not decided using the required evidence test. In fact, *Simms* did not address the required evidence test at all.

fellatio – but criminalized by different statutes which are composed of different elements. Merger makes sense in *Lancaster*, and similarly in *Frazier*, because the conduct is the same but criminalized by different sections of the criminal code, some with more elements than others.

But, returning to the nesting analogy, if one of the dolls is of a different shape, there cannot be a fit. So, our *second* point is that merger does not apply under the required elements test in this case because we have a court order designed to prospectively regulate conduct and separate criminal conduct. Simply because a criminal act can be a basis for a violation of an order of protection, does not mean that criminal act is a lesser included offense under the required elements test.

The legislature has codified the penalties for violations of the protective order statute under Family Law article § 4-509, not the criminal code. Maryland Pattern Jury Instruction-Criminal, § 4:26A states that in order to prove that a defendant violated a protective order, the State must prove that:

> (1) **a protective order was issued**;
> (2) **the protective order required the defendant**:
>      (a) [to refrain from abusing or threatening to abuse (name);]
>      (b) [to refrain from contacting, attempting to contact or harassing (name);]
>      (c) [to refrain from entering the residence of (name) located at _____;]
>      (d) [to immediately vacate the home of (name) located at _____;]
>      (e) [[to remain away from (name) [place of employment] [school] [temporary residence] located at _____;]]
>      (f) [to remain away from (name) family member's residence located at _____;]
>      (g) [to surrender a firearm in the defendant's possession to law enforcement;]

24

(h) [to refrain from possessing any firearms for the duration of the order;]

(3) **the defendant violated the order by**:

(a) [abusing or threatening to abuse (name);]

(b) [contacting or attempting to contact or harass (name);]

(c) [entering the residence of (name) located at _____;]

(d) [failing to immediately vacate the home of (name) located at _____;]

(e) [[failing to remain away from (name) [place of employment] [school] [temporary residence] located at _____;]]

(f) [failing to remain away from (name) family member's residence located at _____;]

(g) [failing to surrender a firearm in the defendant's possession to law enforcement;]

(h) [possessing a firearm;]

(4) **the defendant knew of the order**; and

(5) **the protective order was in effect at the time of the alleged violation** (emphasis supplied).

Second-degree assault is not an element of a violation of a protective order any more than is first-degree assault, attempted rape, or second-degree murder. Any of those crimes may be described as "abuse, or threatening abuse" under FL § 4-509, but these criminal offenses cannot be described as elements of a violation of a protective order.

Further, on this same point, we agree with the State's argument as set forth in its brief, that the mens rea of the two offenses at issue here are different. As can be seen from CL § 3-201(b), mens rea for second-degree assault is a general intent to harm.[19] On the other hand, the mens rea for the violation of a protective order is knowledge of the protective order. *See* MJPI-Crim § 4:26A(4). There cannot be merger of two offenses where the mens rea for each offense is different.

---

[19] CL § 3-201(b): "Assault" means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings."

25

*Third*, the evolution of the domestic violence statute over 40 years shows that the General Assembly sought to protect citizens who were related by blood, marriage, or who were in otherwise intimate relationships, from future physical harm or harassment by persons to whom they are related. The Court of Appeals not only recognized this "remedial" aspect of the protective order statute in *Katsenelenbogen*, the Court also observed that the General Assembly never intended that individuals who were subject to a domestic violence order should escape criminal sanction if the protective order was violated. Indeed, the protective order's statutory scheme establishes that it is a civil remedy whose violation is punishable by something close to criminal contempt. *See, e.g.*, FL § 4-508. The protective order statute seeks to compel compliance with a civil order of court, unlike the criminal law. We conclude that the legislature did not intend to allow respondents who violate domestic violence orders to be able to do so and not face a separate sanction for their underlying criminal conduct.[20] Under Mr. Morgan's logic he could have

---

[20] Based on the history and intent of the domestic violence statute, arguably, the legislature implicitly sought to impose separate punishments for a violation of an order of protection and the underlying criminal conduct. In *Newton v. State*, 280 Md. 260 (1977), although holding that the defendant's convictions for attempted robbery and murder merged, the Court of Appeals

> [n]oted…that under certain circumstances, multiple punishment or successive trials for offenses deemed the same under the required evidence test do not violate the Fifth Amendment prohibition against double jeopardy. . . . Likewise, the legislature may indicate an express intent to punish certain conduct more severely if particular aggravating circumstances are present by imposing punishment under two separate statutory offenses which otherwise would be deemed the same under the required evidence test.

(continued)

maimed or permanently disfigured Ms. Costa and escaped any punishment other than an 18-month maximum sentence for the protective order violation. Not only is this illogical, it is unthinkable that the legislature ever intended such a result.

**F. The Application of the Rule of Lenity to this Appeal Does Require Merger**

Finally, and critical to our holding, we must address the Rule of Lenity. In *Quansah*, this Court held that although the appellant's two sentences would not merge under the required evidence test, they must merge under the Rule of Lenity. When statutory interpretation is necessary in deciding a criminal case, the Rule of Lenity states that the defendant is given the benefit of the doubt if the court is uncertain as to the legislature's intent. *Quansah*, 207 Md. App. at 645 (citing *Walker v. State*, 53 Md. App. 171, 2021 (1982)). In *Quansah*, we held that a defendant's sentence for the violation of a peace order must merge into his sentence for second-degree assault because the two convictions arose from the same criminal behavior, and we found "nothing to indicate whether the legislature intended to authorize multiple punishments for a second-degree assault and a violation of a protective order based on the same assaultive behavior." *Id.* at 656. Under the Rule of Lenity, by which the defendant receives the benefit of the doubt, we merged the sentences by vacating the lesser sentence for the peace order violation.

---

*Id*. at 274 n. 4. While the legislature has not explicitly indicated separate punishments for violations of the domestic violence statute, we think the legislative intent behind the domestic violence statute presents a circumstance where multiple punishments are strongly implied.

27

The convictions in this case are nearly identical with those in *Quansah*, except that instead of a peace order, Mr. Morgan was convicted of violating a protective order as well as second-degree assault. The analysis, however, remains the same. *See Simms v. State*, 240 Md. App. 606, 627 (2019) (finding that there does not seem to be "any substantial basis to differentiate" between a peace order and a domestic protective order). This Court has already determined in *Quansah* that there is uncertainty as to whether the legislature intended to authorize multiple punishments for these two convictions. And because both convictions in this case arose from the same assaultive behavior, under *Quansah*, the Rule of Lenity requires the merging of Mr. Morgan's sentence for violation of a protective order into his sentence for second-degree assault. *See Abeokuto v. State*, 391 Md. 289, 356 (2006) ("where there is a merger under the rule of lenity, the offense carrying the lesser maximum penalty ordinarily merges into the offense carrying the greater maximum penalty.") (citations omitted); *Miles v. State*, 349 Md. 215, 221 (1998) (same). Thus, Mr. Morgan's sentence for violation of a protective order should merge into the sentence for second-degree assault. To achieve this, we vacate Mr. Morgan's sentence for violation of a protective order.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY FOR SENTENCE FOR VIOLATING A PROTECTIVE ORDER VACATED. APPELLANT TO PAY TWO-THIRDS OF THE COSTS, HARFORD COUNTY, ONE-THIRD.**